IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MITSUI O.S.K. LINES, LTD.,<br><br>  Plaintiff,<br><br>  v.<br><br>SEAMASTER LOGISTICS, INC., et al.,<br><br>  Defendants. | Case Nos.:  10-cv-5591 SC (JSC)<br>                       11-cv-2861 SC (JSC)<br><br>**ORDER RE: JOINT STATEMENTS REGARDING DISCOVERY DISPUTES, (Dkt. Nos. 83 & 86)** |

Pending before the Court are two Joint Statements regarding discovery disputes. First, Plaintiff seeks further responses to its Request for the Production of Documents No. 1(b) from Defendants, SeaMaster Logistics, Inc., and Toll Global Forwarding (Americas), Inc. [previously named as Summit Logistics International, Inc.] (Dkt. Nos. 86 & 87.)[1] Second, Defendant SeaMaster Logistics, Inc., seeks a further response to Request for the Production of Documents No. 23. (Dkt. No. 83). Because resolution of both these disputes turns on the proportionality analysis called for by Federal Rule of Civil Procedure 26, the Court addresses the disputes together.

---

[1] For ease of reference, the Court cites to the Docket Numbers from Case No. 10-5591 SC (JSC), although the Court notes that each filing was generally cross-filed in the related case No. 11-2861 SC (JSC).

## BACKGROUND

On October 17, 2012, the parties filed two separate Joint Statements outlining numerous discovery disputes (ten in total). (Dkt. Nos. 59 & 60.) Additional discovery disputes followed. On November 8, 2012, the Court heard oral argument regarding the pending disputes, and ordered the parties to meet and confer further regarding some of the disputes; the remainder were resolved by order of November 8, 2012. (Dkt. No. 77). Fact discovery closed on November 28, 2012; on that same date, the parties filed another series of Joint Statements regarding discovery disputes, some of which follow-up on matters addressed at the hearing on November 8, 2012 and others raise entirely new disputes. The pending disputes represent one of each.

## DISCUSSION

As an initial matter, the Court notes that trial in these cases is scheduled to begin on January 28, 2013. Despite this, the parties continue to demand extensive discovery from each other and dispute the thoroughness of productions that began months ago. The Court must weigh each side's discovery requests under the proportionality standard set forth in Rule 26. The Court must limit discovery where:

(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
(ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
(iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

Fed. R. Civ. P. 26(b)(2)(C).

**1. Plaintiff's Request No. 1(b) – House Bills of Lading**

Plaintiff seeks discovery of the house bills of lading ("HBLs") for each shipment it moved pursuant to Defendants' service contracts for 2008, 2009, and 2010. *See* Dkt. No. 86-1 (Plaintiff's Request for Documents No. 1(b)). Plaintiff claims to have produced shipping data

for nearly 40,000 shipments, but contends that Defendants have failed to produce HBLs for all of these shipments.

Defendants have produced the HBL data in two forms (Plaintiff previously agreed to accept the response in any form): 1) as spreadsheets of data extracted from their electronic shipping systems, and 2) as paper HBLs. With respect to the electronic data, Defendants' portion of the Joint Statement includes detailed information regarding the computer data used to generate the spreadsheets for the Asia and United States HBL data. Defendants represent that they have produced the data that origin stations in China, Hong Kong, and Taiwan used to generate HBLs from 2007 to June 2011 (when the last service contract ended), as well as some additional data for stations that opened after 2007. Defendants have also included data from its domestic stations that acted as receiving agents for the cargo and did not generate any HBLs. Defendants contend that this data includes the 4,000 shipments which Plaintiff's audit identified as undercharged, as well as thousands of additional shipments.

Defendants have also produced paper HBLs for all shipments identified as undercharged shipments and for the Shenzen door shipments.[2] In total, Defendants estimate that they have made over 4,900 paper HBLs available for inspection and copying at defense counsel's office. Defendants represent that collection of these 4,900 paper HBLs required nearly 100 individuals to search warehouses in seven countries over a six-month period. Defendants also offered to allow Plaintiffs to review the paper files for all shipments at their warehouses in City of Industry, California; Springfield Gardens, New York; and Medley, Florida, where the records are kept. Plaintiff visited the New York warehouse in September, 2012, but has declined to visit the others.

Plaintiff contends that Defendants' production is inadequate; Defendants should have to produce HBLs for all shipments it moved pursuant to the relevant Service Contracts rather than requiring Plaintiff to cull through Defendants' records. In particular, Plaintiff seeks all remaining paper HBLs including but not limited to HBLs, "job files" and shipping

---

[2] Defendants contend that these are the only two relevant categories of shipments, but nonetheless represent that they have produced paper HBLs "for many additional shipments" and "electronic HBL data for essentially all the shipments." (Dkt. No. 86, p. 4.)

3

documents, in their warehouses and/or offices at their sole expense. Alternatively, Plaintiff requests that Defendants produce all documents necessary to complete the electronic production such as the "attached lists" referenced in Leo but which were not produced with the spreadsheet(s).

Under Rule 26 the Court must weigh Plaintiff's need for additional discovery against the burden on Defendants of providing this discovery. Plaintiff's claim regarding relevance is vague at best: "HBLs, which contain information relating to MOL's claims of mis-rating as well as trucking fraud for both foreign and domestic movements, are highly relevant documents of which only defendants and their agents or affiliates have possession, custody or control." (Dkt. No. 60, p. 3.) While Plaintiff represents that it needs the paper copies to support its claims and defenses, Plaintiff did not provide any of the paper HBLs that have already been produced to its auditor in connection with her expert report; thus, it is not clear why the papers copies are critical. Further, the Court must consider the potential cumulative nature of the discovery sought. Plaintiff has subpoenaed Defendant SeaMaster's domestic clients and obtained HBLs. It similarly has obtained paper HBLs from third-party Defendants American Global Logistics and Kesco. Given the voluminous discovery produced by Defendants, the discovery Plaintiffs have obtained from other parties, and the burden of requiring further discovery from Defendants on what is essentially the eve of trial, the Court finds that Plaintiff is not entitled to require Defendants to bear the expense of producing the un-produced paper HBLs. If Plaintiff wishes to pursue this discovery, Defendants shall make all the paper HBLs as well as the "attached lists" referenced in LEO, but not produced with the spreadsheets, available for Plaintiff's inspection and copying in the same format as regularly stored.

**2. Defendants' Request No. 23 – Master Bills of Lading**

Defendant SeaMaster Logistics, Inc., seeks the spreadsheet data used to generate the freighted Master Bills of Lading ("MBLs"); the freighted MBLs list the amounts Plaintiff charged to Defendant for each shipment. In particular, Defendant is seeking the data behind Plaintiff's auditor's determination that Defendant was undercharged for 4,000 shipments

4

(approximately 11% of Defendant's total shipments with Plaintiff). The shipping data is maintained on Plaintiff's proprietary StarNet computer system. Plaintiff has produced over 300,000 screenshots of shipping records from StarNet in a non-electronically searchable format. Defendant contends that reviewing these screenshots, or even the subset of the 40,000 screenshots which may be identified as relating to the freighted MBLs to locate the 4,000 relevant shipments identified as undercharged is impossible; Defendant requests that the MBL data be produced in spreadsheet format in light of Plaintiff's previous production of some data from this system in spreadsheet format.

Plaintiff responds that it cannot simply convert the data from StarNet into a spreadsheet; instead, Plaintiff would be required to hire an engineer to draft a program to extract the data from StarNet and create a spreadsheet, which would take many months. Plaintiff contends that it provided the discovery in the format in which it is usually maintained and that it is all it is required to do under Rule 34(2)(E)(ii) which requires electronically stored data to be produced either in the form it is usually maintained or in a reasonably usable form.

As with the dispute regarding the HBLs, the Court must weigh the moving party's need for the discovery sought against the burden associated with producing the discovery. Here, the burden on Plaintiff to produce the MBL data in spreadsheet format is significant, and likely insurmountable given the impending trial date. However, this evidence is essential to Defendant's ability to defend itself, even outside the scope of the underlying discovery request Plaintiff would be required to disclose this information – Plaintiff is required to disclose the computation for each category of damages claimed and produce the documents upon which the damages claim is based. *See* Fed. R. Civ. P. 26(a)(1)(A)(iii). Further, the data is "usually maintained" in a searchable database, not in unsearchable pdfs of screen shots; thus, Plaintiff's production did not comply with Rule 34(2)(E)(ii). Accordingly, Plaintiff shall reproduce the requested freighted MBL data in .ocr or other searchable format for at least the approximately 4,000 undercharged shipments. Plaintiff shall do so within 10 days of the filing date of this Order.

1   This Order disposes of Docket Nos. 83, 86 & 87 in Case No. 10-5591, and Docket
2   Nos. 141 & 142 in Case No. 11-2861.

4   **IT IS SO ORDERED.**

6   Dated: December 6, 2012

_____
JACQUELINE SCOTT CORLEY
UNITED STATES MAGISTRATE JUDGE