```
                IN THE UNITED STATES DISTRICT COURT

              FOR THE NORTHERN DISTRICT OF CALIFORNIA


MITSUI O.S.K. LINES, LTD.,          )  Case Nos. 11-cv-2861-SC
                                    )            10-cv-5591-SC
           Plaintiff,               )
                                    )
     v.                             )  ORDER GRANTING MOTION TO
                                    )  CONSOLIDATE AND DENYING
SEAMASTER LOGISTICS, INC., SUMMIT   )  MOTION FOR LEAVE TO FILE
LOGISTICS INTERNATIONAL, INC.,      )  THIRD AMENDED COMPLAINT
AMERICAN GLOBAL LOGISTICS, LLC,     )
KESCO CONTAINER LINE, INC., KESCO   )
SHIPPING, INC., and DOES 1 through  )
20,                                 )
                                    )
           Defendants.              )
                                    )
```

## I. INTRODUCTION

Now before the Court is the motion of Plaintiff Mitsui O.S.K. Lines, Ltd. ("Plaintiff") for leave to file a Third Amended Complaint ("3AC") and to consolidate the two, above-captioned cases for trial. Case No. 10-cv-5591-SC, Dkt. Nos. 56, 57 ("Mot."). Defendant American Global Logistics, LLC ("AGL") has filed an opposition, as have Defendants Seamaster Logistics, Inc. ("Seamaster") and Summit Logistics International, Inc. ("Summit") (collectively, "SM&S"). Id., Dkt. Nos. 65 ("AGL Opp'n"), 67 ("SM&S Opp'n"). Plaintiff filed a single, omnibus reply addressing both oppositions. Id., Dkt. No. 72 ("Reply"). Plaintiff's motion is

suitable for decision without oral argument. Civ. L.R. 7-1(b). For the reasons set forth below, the Court CONSOLIDATES the above-captioned cases for trial but DENIES Plaintiff's motion for leave to file a Third Amended Complaint. The bench trial set to commence January 28, 2013 remains scheduled for that date.

## II. BACKGROUND

The two cases now before the Court were related on January 4, 2012. Case No. 10-cv-5591-SC, Dkt. No. 32.[1] They involve substantially similar defendants but allege different conduct and claims. In Case No. 10-cv-5591-SC (the "'91 case"), the thrust of Plaintiff's allegations is that Defendants "obtained transportation of property at less than the rates or charges established by [Plaintiff] in its published tariff and in the service contracts on file with the [Federal Maritime Commission]." Mot. at 2. Plaintiff's operative, Second Amended Complaint was filed March 30, 2012, and asserts claims: (1) for breach of maritime contract under the Shipping Act, 46 U.S.C. §§ 40101 et seq. or (2) in the alternative, for unpaid "dead freight" charges; and (3) an accounting. Dkt. No. 37 ("'91 SAC").

In Case No. 11-cv-2861-SC (the "'61 case"), Plaintiff alleges that it was the victim of a conspiracy to bill it for container moves that never occurred, as well as to overcharge it for container moves that did occur. Mot. at 2. The '61 case names as Defendants the same parties as the '91 case, and also Kesco Container Line, Inc. and Kesco Shipping, Inc. (collectively,

---

[1] Unless otherwise indicated, the Court cites herein to the docket of Case No. 10-cv-5591-SC.

"Kesco").  The operative, Second Amended Complaint in the '61 case was filed February 24, 2012, and asserts claims: against Seamaster, Summit, and AGL, for (1) intentional misrepresentation; (2) conspiracy to intentionally misrepresent or, in the alternative, (3) negligent misrepresentation; (4) civil RICO violations under 18 U.S.C. § 1962(c); (5) conspiracy to commit civil RICO violations under 18 U.S.C. § 1962(d); and, against Kesco, for (6) intentional misrepresentation; and, against Kesco and Summit, for (7) conspiracy to intentionally misrepresent or, in the alternative, against Kesco only, (8) negligent misrepresentation.  Case No. 11-cv-2861-SC, Dkt. No. 72 ("'61 SAC").

On February 10, 2012, the Court gave Plaintiff a deadline of April 1, 2012 to amend its complaints and all parties a discovery cutoff date of November 28, 2012.  Dkt. Nos. 35, 36.

On October 12, 2012 -- four and a half months after the deadline to amend the complaint but only six weeks before the close of discovery -- Plaintiff filed the instant Motion for leave to file a Third Amended Complaint, along with the proposed Third Amended Complaint.  Dkt. No. 56-1 ("Prop. 3AC").

**III. DISCUSSION**

    **A.  Motion to Consolidate**

Plaintiff moves to consolidate the above-captioned cases for trial pursuant to Federal Rule of Civil Procedure 42(a).  "If actions before the court involve a common question of law or fact, the court may . . . consolidate the actions . . . ."  Fed. R. Civ. P. 42(a)(2).  "A district court generally has broad discretion to consolidate actions . . . ."  Pierce v. County of Orange, 526 F.3d

1190, 1203 (9th Cir. 2008) (internal quotation marks omitted). District courts should "weigh the saving of time and effort that consolidation under Rule 42(a) would produce against any inconvenience, delay, or expense that it would cause for the litigants and the trial judge." Wright & Miller, 9A Fed. Prac. & Proc. Civ. § 2383 (3d ed.).

Here, the Court initially scheduled the trials of the '61 case and the '91 case to run back-to-back, commencing January 28, 2013. Consolidation would result in trial of both cases at once rather than two separate trials. No Defendant opposes consolidation, which strongly suggests the absence of potential inconvenience, delay, or expense for the litigants. AGL Opp'n at 2 n.1; SM&S Opp'n at 1. Nor will the Court will suffer any. On the contrary, consolidation will speed trial and conserve the parties' resources, as well as the Court's. The Court finds the questions of law and fact to be closely enough related as to warrant consolidation, given that this is a bench trial.

Accordingly, the motion to consolidate Case Nos. 10-cv-5591-SC and 11-cv-2861-SC is GRANTED.

**B. Motion for Leave to File Third Amended Complaint**

When, as here, a district court has entered a scheduling order setting a deadline to amend the pleadings, and a party moves to amend the pleadings after the deadline, the motion amounts to one to amend the scheduling order and thus is properly brought under Rule 16(b) rather than Rule 15. See Coleman v. Quaker Oats Co., 232 F.3d 1271, 1294 (9th Cir. 2000). The two standards are "not coextensive." Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 609 (9th Cir. 1992). While the Rule 15 standard for granting leave

4

to amend the pleadings is "liberal," id., under Rule 16, "[a] schedule may be modified only for good cause and with the judge's consent," Fed. R. Civ. P. 16(b)(4). The good cause inquiry "primarily considers the diligence of the party seeking the amendment." Coleman, 232 F.3d at 1294 (quoting Johnson, 975 F.2d at 609). The existence and degree of prejudice to the non-moving party are also appropriate considerations, however. See id. at 1295; Johnson, 975 F.2d at 609.

Demonstrating diligence under Rule 16 may require the movant to show, among other things, "that [the movant] was diligent in seeking amendment of the Rule 16 order, once it became apparent that [the movant] could not comply with the order." Jackson v. Laureate, Inc., 186 F.R.D. 605, 608 (E.D. Cal. 1999) (citation omitted). If the district court finds a lack of diligence, "the inquiry should end." Johnson, 975 F.2d at 609. If, however, the movant clears the Rule 16 bar, the Court proceeds to considering the motion under the usual standard of Rule 15.[2]

Here, the Court need not engage in the Rule 15 analysis, because it determines that Plaintiff has fallen short of showing good cause by waiting too long to file the instant motion. Plaintiff filed its motion to amend on October 12, 2012. Yet, by Plaintiff's own account, the amendments are based on discovery taken as early as August 15, 2012, including a purported "bombshell" produced on August 24, 2012. See Mot. at 4; see also

---

[2] See Hood v. Hartford Life & Acc. Ins. Co., 567 F. Supp. 2d 1221, 1224 (E.D. Cal. 2008) (citing Johnson, 975 F.2d at 608); see also M.H. v. County of Alameda, 11-2868 CW, 2012 WL 5835732, at *2 (N.D. Cal. Nov. 16, 2012) (Rule 16(b)'s "good cause" inquiry "essentially incorporates" all of the Rule 15 factors but futility, so, "if a court finds that good cause exists, it should then deny a motion for leave to amend only if such amendment would be futile.").

5

Reply at 3 n.2 (describing deposition testimony concerning alleged Shenzhen trucking scheme taken July 13, 2012). Plaintiff provides no explanation for why it waited, at minimum, nearly two full months to move to amend its complaint, despite its knowledge that the discovery cutoff in this action loomed at the end of November. Plaintiff could, and should, have foreseen that a motion to amend to add new claims and enhance the amount of damages requested would encounter stiff resistance and, if granted, place significant pressure on Defendants to conduct additional discovery concerning those claims and its possible defenses. Further, Plaintiff's filing appears to have been timed to coincide with the undersigned's last scheduled law-and-motion date before the end of the discovery period.

Plaintiff suggests that Defendants need no further discovery because Defendants themselves possessed the information giving rise to the amendments, but the suggestion is not well-taken. Plaintiff's Proposed Third Amended Complaint adds new claims of liability and damages which were not necessarily suggested by Plaintiff's previously filed complaints and, hence, could require new discovery into the new "claim[s] and defense[s]." See Fed. R. Civ. P. 26(b)(1). For example, Plaintiff seeks to add a claim against AGL for "fraudulent abuse of 'free time.'" Prop. 3AC ¶¶ 85-89.[3] This is an entirely new theory of recovery, the gravamen of which is that AGL allegedly lulled Plaintiff into misapplying

---

[3] Allegedly, Plaintiff contractually allowed AGL a certain amount of "free time" for using Plaintiff's equipment to move cargo to and from a terminal; usage beyond the allotted time results in a "per diem" charge. Plaintiff proposes to allege that AGL sent Plaintiff "false and misleading emails" in hopes of improperly "stopping the clock" and not charging per diems that would otherwise be owed. See Prop. 3AC ¶¶ 85-89,

6

its own policies. The email leading to these proposed allegations was produced on September 6, 2012 -- more than a month before Plaintiff moved to amend. Further, as AGL points out, to defend against this claim, AGL would need to take discovery on a wide variety of issues related to, inter alia, Plaintiff's policies and implementation thereof. See AGL Opp'n at 8.

Likewise, Plaintiff has failed to show the requisite level of diligence as to the allegations and claims concerning Seamaster and Summit. For example, Plaintiff seeks to expand the scope of its breach of maritime contract claim to encompass two more service contracts, in addition to the three already identified in earlier pleadings. See Prop. 3AC ¶ 59 (identifying service contracts 4031024A07 and 4031024B07, in addition to previously identified service contracts 8084273A08, 8084273A09, and 8084273A10). The two additional contracts are between third parties to this litigation; Plaintiff appears to seek to hold Seamaster and/or Summit liable for undercharges passed on to Plaintiff which originated from undercharges on shipments made pursuant to the third-party contracts. See Reply at 12 (Plaintiff "does seek recovery of undercharges found in defendants' shipments with Plaintiff . . . regardless of what service contract they were carried under."). Plaintiff does not explain, however, why it did not include allegations bearing on such contracts in earlier versions of the complaint. See id. As such, Plaintiff has not made the required showing of diligence.

Further, the Court finds that allowing Plaintiff to add additional service contracts to the scope of this action would be unduly prejudicial. As set forth in Magistrate Judge Corley's

7

discovery order of December 6, 2012, Dkt. No. 159, the scope of discovery associated with the three service contracts already identified has been voluminous, encompassing "nearly 40,000 shipments," and the parties are still embroiled in disputes over the amount and quality of production already made. Plaintiff argues that the Proposed Third Amended Complaint was served early enough to give Defendants "ample time . . . to conduct any discovery related to its allegations." The fact that discovery served much earlier is still going on suggests otherwise. But, even if Plaintiff's contention is true, the proper measure is not whether Plaintiff left Defendants the amount of time Plaintiff thinks is required for Defendants to conduct discovery; it is whether Plaintiff diligently sought amendment. The Court determines that it did not.

### IV. CONCLUSION

For the foregoing reasons, the Court hereby CONSOLIDATES for trial Case No. 10-cv-5591-SC and Case No. 11-cv-2861-SC.

The Court hereby DENIES the motion of Plaintiff Mitsui O.S.K. Lines, Ltd. for leave to file a Third Amended Complaint.

The bench trial set to commence January 28, 2013 remains scheduled for that date.

IT IS SO ORDERED.

Dated: December 7, 2012

_____
UNITED STATES DISTRICT JUDGE