**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MITSUI O.S.K. LINES, LTD.,      )   Case Nos. 11-cv-02861-SC
         )              10-cv-05591-SC
      Plaintiff,          )
         )
   v.                 )   ORDER GRANTING PLAINTIFFS'
         )   AND DEFENDANTS SEAMASTER
SEAMASTER LOGISTICS, INC., SUMMIT )   AND SUMMIT'S MOTIONS FOR
LOGISTICS INTERNATIONAL, INC.,    )   <u>ATTORNEYS' FEES</u>
KESCO CONTRAINER LINE, INC.; KESCO )
SHIPPING, INC., and DOES 1 through )
20,                    )
         )
      Defendants.         )
         )

## I.   <u>INTRODUCTION</u>

Now before the Court are Plaintiff Mitsui O.S.K. Lines, Ltd. ("MOL") and Defendants Seamaster Logistics, Inc. and Summit Logistics International, Inc.'s ("Defendants") cross-motions for attorneys' fees.  MOL moves for fees in Case Number 11-cv-02861-SC (the "trucking case" or "'61 Case").  '61 Case ECF No. 264 ("MOL Mot.").  Defendants move for fees in Case Number 10-cv-05591-SC (the "freight re-rating case" or "'91 Case").  '91 Case ECF No. 199 ("Defs.' Mot.").

///

///

1    Both motions are fully briefed,[1] and both are suitable for

2    decision without oral argument per Civil Local Rule 7-1(b).  As

3    explained below, the Court GRANTS both parties' motions.

4

5    **II.    BACKGROUND**

6    MOL is an ocean carrier and common carrier of goods between

7    the United States and foreign ports.  Defendants are non-vessel

8    operating common carriers ("NVOCC").  MOL contracted with

9    Defendants to carry goods to the United States and foreign ports.

10   All of these agreements were governed by a complicated array of

11   bills of lading, tariffs, and service contracts.

12   After internal audits and a tip from another NVOCC led MOL to

13   believe that Defendants were defrauding it in various ways, MOL

14   sued Defendants.  In the freight re-rating case, MOL asserted that

15   Defendants obtained ocean carriage from MOL at rates less than

16   those established in MOL's published tariffs and federally filed

17   service contracts.  Based on those undercharges, MOL sued

18   Defendants for violation of the Shipping Act of 1984 (the "Shipping

19   Act"), 46 U.S.C. § 40101 et seq., breach of maritime contract, and

20   accounting.  In the trucking case, MOL asserted that Defendants

21   conspired to induce MOL to pay for fake trucking shipments between

22   inland factories and ports.  Based on those allegations, MOL sued

23   Defendants under the federal Racketeer Influenced and Corrupt

24   Organizations Act ("RICO"), 18 U.S.C. § 1962.  MOL also asserted

25   claims for intentional and negligent misrepresentation and civil

26   conspiracy.

27   _____

28   [1] '61 Case ECF Nos. 278 ("Opp'n to MOL Mot."), 289 ("Reply ISO MOL
     Mot."); '91 Case ECF Nos. 211 ("Opp'n to Defs.' Mot."), 216 ("Reply
     ISO Defs.' Mot.").

**United States District Court**
For the Northern District of California

2

**United States District Court**
For the Northern District of California

1    After a three-week trial, the Court found for MOL in the

2  trucking case and against it in the freight re-rating case.  '91

3  Case ECF No. 194 (Findings of Fact & Conclusions of Law ("FFCL")).

4  Now MOL moves for attorneys' fees in the trucking case, and

5  Defendants move for fees in the freight re-rating case.

6

7  **III.   ANALYSIS**

8          **A.    MOL'S Motion for Fees**

9    MOL requests fees based on the following provision of MOL's

10  Tariff No. 138, which sets forth the terms and conditions of MOL's

11  bill of lading and is incorporated into all Service Contracts

12  between MOL and Defendants:

13

14          The Merchant [Defendants] shall be liable to
            the Carrier [MOL] for the payment of all
            Freight and/or expenses including but not

15          limited to court costs, legal fee [sic] and
            expenses incurred in collecting monies due

16          to the Carrier.

17  MOL Mot. Ex. A ("Tariff") ¶ 11(5).  MOL's Service Contracts also

18  include arbitration clauses that grant MOL several exceptions to

19  otherwise-mandatory arbitration in disputes under the Service

20  Contracts, though only the following exception is relevant to this

21  case:

22

23          . . . MOL may bring an action for unpaid
            freight or charges due for transportation
            services performed for Shipper in any court

24          of competent jurisdiction.  For purposes of
            the foregoing exceptions, the Parties

25          consent to personal jurisdiction and venue
            in any California Court.  The party

26          obligated to pay such sums shall be liable
            to the Party owed such sums for interest on

27          the principal sum on and after the due date
            plus reasonable attorney's fees and costs.

28

3

**United States District Court**
For the Northern District of California

1   Opp'n to MOL Mot. Ex. B ("Service Contract(s)") Clause 19(d).[2]   The

2   Service Contracts further specify that they control in any

3   conflicts with the incorporated Tariff.  <u>Id.</u> Clause 2.

4       MOL argues that it is entitled to fees under the Tariff

5   because it incurred expenses while attempting to collect the money

6   Defendants tricked it into paying as part of their false trucking

7   scheme.  MOL Mot. at 3-4.

8       Defendants respond that MOL is not entitled to fees in the

9   trucking case because the Court cannot grant fees in a fraud case

10  absent a contract providing for fees, an equitable grant of fees in

11  the interest of justice, or a statute or rule providing for fee-

12  shifting.  <u>See</u> Opp'n to MOL Mot. at 2.  As to MOL's argument that

13  the Tariff is a contract providing for fees in this case,

14  Defendants claim that the fee provision in the Tariff is restricted

15  to the recovery of money due under the contract itself, which

16  Defendants say excludes tort actions for fraud.  <u>Id.</u> at 5-6.

17  Further, Defendants argue that the Service Contracts conflict with

18  the Tariff's fee provision, such that the Service Contracts'

19  narrower provision for fees under the arbitration clause restrict

20  MOL's access to fees.  <u>Id.</u>

21      As to how these agreements should be interpreted, the Service

22  Contracts incorporate the Tariff and contain no surplusage, but the

23  presence of two clauses that each contain a fee provision does not

24  mean that the narrower provision in the Service Contracts cancels

25  the broader one in the Tariff.  The Service Contracts' fee

26  provision is available to MOL in an action under the Service

27  _____

28  [2] Two particular Service Contracts were at issue in this case, but since their relevant parts are identical, the Court cites them generally as "Service Contracts" for purposes of this discussion.

United States District Court
For the Northern District of California

Contracts, as part of Clause 19(d)'s exception to the Service
Contracts' otherwise-mandatory arbitration provision.  The Court
finds that the Tariff's fee provision is separate from the Service
Contracts' arbitration clause exception and not in conflict with
it.

Further, the Court finds that that the expansive language of
the clause allows the fee provision in the Tariff to apply
generally to MOL's actions to collect monies due, since the Tariff
renders Defendants liable to MOL for payment of all "Freight and/or
expenses . . . incurred in collecting monies due [to MOL]."  Tariff
¶ 15(d).  The Court also finds that MOL's claims against Defendants
in the trucking case were actions undertaken to collect monies due.
MOL was entitled to take back the money Defendants had tricked it
into paying, and it incurred expenses doing so.  Further, it is
clear that MOL's causes of action arose "out of or in connection
with" the Tariff, since that document embodied the parties'
relationship that gave rise to Defendants' fraud.  See Marsu, B.V.
v. Walt Disney Co., 185 F.3d 932, 939 (9th Cir. 1999).  Therefore
the Court finds that MOL is entitled to attorneys' fees in the
trucking case.

Finally, after reviewing MOL's briefs and documentation, as
well as Defendants' responses, the Court finds MOL's request for
fees reasonable.  The Court awards MOL $703,403.50 in attorneys'
fees.  The Court declines to consider any of MOL's alternative
bases for or calculations of its requested fees, since MOL's main
argument prevailed.

///

///

5

**United States District Court**
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**B.   <u>MOL's Costs</u>**

MOL requested a total of $110,528.22 in costs.  '61 Case ECF No. 263 ("Bill of Costs").  Defendants timely filed an objection to MOL's Bill of Costs, requesting that MOL's recoverable costs be reduced to $18,893.81.  '61 Case ECF No. 281 ("Obj'n to Costs").  MOL filed a brief in support of its Bill of Costs, requesting that the Court award MOL all costs not otherwise withdrawn.  '61 Case ECF No. 290.  The Clerk of Court ultimately taxed a total of $75,543.81.  '61 Case ECF No. 292 ("Taxation of Costs").  Defendants thereafter requested that the Court reduce the Clerk's Taxation of Costs by $20,490.66, because MOL had agreed to withdraw those costs but the Clerk did not account for MOL's withdrawal.  '61 Case ECF No. 295 (Suppl. Decl. of Essick ISO Obj'n to Costs ("Essick Supp. Decl.")); Essick Supp. Decl. Ex. B ("MOL's Withdrawals").

Aside from the withdrawn costs, which relate to printing fees and "other costs," Defendants object to five categories of costs: (1) fees of the clerk; (2) fees for service of summons and subpoena, and for private process servers; (3) fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (4) fees for exemplification and copying; and (5) compensation of interpreters.  <u>See</u> Obj'n to Costs at 2-4.  Defendants claim that these costs should be disallowed, halved, or allocated to other defendants.

An award of costs to a prevailing party is routine under Federal Rule of Civil Procedure 54(d)(1) and 28 U.S.C. § 1920. In considering objections to a party's bill of costs, it is the district court's responsibility to exercise its discretion.  <u>See</u>

**United States District Court**
For the Northern District of California

1   <u>Assoc. Of Mexican-Am. Educators of Cal.</u>, 231 F.3d 572, 591-93 (9th

2   Cir. 2000).

3       The Court has reviewed MOL's Bill of Costs, Defendants'

4   Objections, the Clerk's Taxation of Costs, and Defendants'

5   supplemental statements.  Defendants have not filed a formal motion

6   challenging the Clerk's Taxation of Costs, but their supplemental

7   filings (filed after the Taxation of Costs) serve essentially the

8   same purpose at this point.  Though the Clerk did not state at

9   length why some of MOL's requested costs were disallowed, the Clerk

10  specified which Local Rules rendered some of MOL's requested costs

11  unrecoverable.  <u>See</u> Taxation of Costs at 2.  The Court, having

12  reviewed the Rules in relation to the requested costs, finds the

13  Clerk's decision appropriate, except where the Clerk taxed costs

14  that MOL had specifically withdrawn.  In short, MOL is not entitled

15  to costs related to cases in which it did not prevail, for costs

16  that the Local Rules do not permit, or for costs it withdrew.

17      As for Defendants' arguments about why MOL's costs should be

18  reduced further, the Court declines to halve costs (like certain

19  depositions) that Defendants claim are applicable to both the

20  freight re-rating case and the trucking case, since it is

21  impossible to partition them without accounting for relevance or

22  sunk costs.  For the same reason the Court declines to allocate

23  certain costs to Defendants' co-defendant Kesco Container.

24  Finally, the Court declines to disallow costs that are taxable

25  under the Local Rules, like graphic design or printing services

26  that were reasonably necessary for trial.

27      Accordingly, the Court OVERRULES all of Defendants' objections

28  except those related to the withdrawn costs.  The Clerk should

disallow MOL's costs for fees and disbursements for printing ($4,149.08) and for "other costs" ($16,341.58).  See Essick Supp. Decl.; MOL's Withdrawals at 1-4.  The Clerk should accordingly tax costs of $55,053.15 for MOL, as opposed to $75,543.81.

**C.**   **Seamaster and Summit's Motion for Fees**

Defendants move for fees in the freight re-rating case.  They argue that California Civil Code section 1717 entitles them to fees in this case because they were the "prevailing parties."  See Def.'s Mot. at 2-4.  Now the Court must decide whether to grant Defendants fees under California Civil Code section 1717(a), which provides as follows:

> In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs.

Actions "on a contract" are not just breach of contract actions.  "On a contract" extends to any action involving a contract under which one of the parties could recover fees after prevailing in a lawsuit.  See In re Tobacco Cases I, 124 Cal. App. 4th 1591, 1601 (Cal. Ct. App. 2011).  For cases like this one, in which a defendant claims to be the prevailing party in an action on a contract, the California Supreme Court has stated that "when a defendant defeats recovery by the plaintiff on the only contract claim in the action, the defendant is the party prevailing on the contract under section 1717 as a matter of law."  Hsu v. Abbara, 9

**United States District Court**
For the Northern District of California

Cal. 4th 863, 876 (Cal. 1995).  In determining which party
prevailed, the Court must consider the extent to which each party
succeeded and failed in its contentions on the contract claims.
Id.  All of these considerations are meant to serve the legislative
purpose of section 1717: to establish a mutuality of remedies when
a contractual provision makes recovery of fees available for only
one party to an action.  Id. at 870.

Defendants argue that the Court should apply California law on
the attorneys' fees issue because the Service Contracts (the
underlying contracts in the freight re-rating case) include the
following choice of law provision: "This Contract is subject to the
U.S. Shipping Act of 1984, as amended by the Ocean Shipping Reform
Act of 1998, and shall otherwise be construed and governed by the
laws of the State of California, except for its choice of law
rules."  Service Contracts Cl. 19(d) (emphasis added).
Accordingly, Defendants assert that under California law, they are
the "prevailing parties" in the freight re-rating action because
they successfully defended against all of MOL's claims based on the
Service Contracts.

MOL argues that a Ninth Circuit case, Roy Allen Slurry Seal v.
Laborers International Union, 241 F.3d 1142, 1146 (9th Cir. 2001),
does not allow the Court to apply California law because the basis
of jurisdiction in this case is maritime or federal question
jurisdiction, not diversity jurisdiction.  See Opp'n to Defs.' Mot.
at 2.  MOL also argues that the fee provision in the Service
Contracts is reciprocal, not unilateral, obviating section 1717
because it only applies to unilateral fee provisions.  Id. at 3.

MOL is wrong on both points.  First, California law applies to

this Clause even though the Court is not exercising diversity jurisdiction over this case.  This is an action "on the contract," and the contract is indisputably governed by California law, not any statutory provision or federal common law.  Service Contracts Cl. 19(a).  MOL's authority, Roy Allen, primarily concerned the Labor Management Relations Act, which the Ninth Circuit held preempts California Civil Code section 1717 because section 1717 would otherwise disrupt the federal government's interest in the uniformity of federal labor law and the interpretation of collective bargaining agreements.  241 F.3d at 1146.  The Ninth Circuit in Roy Allen did not indicate that it meant to preclude federal courts from applying California law in an action on a contract explicitly governed by California law.  Significantly, the Roy Allen Court did not address Resolution Trust Corporation v. Midwest Federal Savings Bank, 36 F.3d 785 (9th Cir. 1993), which specifically directs district courts to apply state law in cases like this one unless the claim for fees arose under a federal statute.  36 F.3d at 799.  Resolution Trust included an exception to that rule for cases in which "issues peculiar to . . . federal law" were litigated, but the Supreme Court overruled the case that was the basis for that exception.  Travelers Cas. and Sur. Co. of Am. v. Pac. Gas & Elec. Co., 549 U.S. 443, 451-52 (2007) (abrogating In re Fobian, 951 F.2d 1149 (9th Cir. 1991)).  Therefore the Court finds that the fee provision in this case is governed by California law, and no federal issue explicitly or implicitly preempts the application of California Civil Code section 1717 in this case.

The Court finds that the freight re-rating case was an action

United States District Court
For the Northern District of California

on a contract.  All of MOL's causes of action were based on the
Service Contracts, and under those contracts, MOL was entitled to
fees.  The Court also finds that Defendants were the prevailing
parties in the freight re-rating case.  In one sense, MOL lost the
freight re-rating case as much as Defendants "won" it, but the
decision was "purely good news" for Defendants, since they were not
liable for any cause of action on the contract, and "purely bad
news" for MOL, which lost on every claim.  See Hsu, 9 Cal. 4th at
876 ("[W]hen the decision on the litigated contract claims is
purely good news for one party and bad news for the other[,] the
Courts of Appeal have recognized that a trial court has no
discretion to deny attorney fees to the successful litigant.").

Accordingly, the Court finds that the balance of good and bad
news favors Defendants, whose definition of a critical contract
term was a central part of the Court's holding in the freight re-
rating case.  Even if the Court considered Defendants' abandoned or
mooted counterclaims in this analysis, Defendants would still be
the prevailing party, since all of their counterclaims were
contingent on their being found liable to MOL in the freight re-
rating case, which they were not.  The Court therefore finds that
Defendants are entitled to reasonable attorneys' fees under
California Civil Code section 1717.[3]

---

[3] MOL's attempt to claim that the fee provision of the Service
Contracts is not unilateral relies on an out-of-context quotation
from the contract.  MOL quotes the part of the Service Contracts
that states only "[t]he party obligated to pay such sums shall be
liable to the party owed such sums."  However, the preceding
sentences of the Service Contracts indicate that only MOL is
permitted to sue for "such sums" (i.e., attorneys' fees).  No other
party to the contract can do the same.  The Court therefore finds
that the fee provision is unilateral.

1   Further, the Court finds Defendants' requested fees reasonable

2   and well documented.  The Court awards Defendants $580,426.11 in

3   attorneys' fees.

4   Separately, MOL claims that awarding fees when Defendants have

5   been found liable for fraud in the trucking case would be

6   fundamentally unjust and inequitable.  Therefore MOL urges the

7   Court to deny Defendants' motion for fees.  The Court declines to

8   do so.  Defendants request fees in relation to the freight re-

9   rating case, not the trucking case.  MOL lost the freight re-rating

10  case, and Defendants prevailed.  Under the applicable law, they are

11  therefore entitled to what they paid to defend themselves against

12  MOL.  It is not unjust or inequitable to award Defendants fees for

13  defending against MOL's meritless action on the contract.

14  ///

15  ///

16  ///

17  ///

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

IV.   **CONCLUSION**

Per above, the Court GRANTS Plaintiff Mitsui O.S.K. Lines, Ltd. and Defendants Seamaster Logistics, Inc. and Summit Logistics International, Inc.'s motions for attorneys' fees.  The Court AWARDS Plaintiff $703,403.50 and Defendants $580,426.11 in attorneys' fees.

As for Plaintiff's Bill of Costs, Defendants' objections to portions of Plaintiff's requested costs that Plaintiff agreed to withdraw -- fees and disbursements for printing, and "other costs" -- are SUSTAINED.  All of Defendants' other objections are OVERRULED.  The Clerk should disallow the amounts it taxed against Defendants for fees and disbursements for printing ($4,149.08) and for "other costs" ($16,341.58).  The Court requests that the Clerk tax costs totaling $55,053.15 for MOL and against Defendants, in accordance with this Order.


IT IS SO ORDERED.


Dated: June  7 , 2013

_____
UNITED STATES DISTRICT JUDGE